**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:24-cr-00252-NYW

UNITED STATES OF AMERICA,

Plaintiff,

v.

RYAN L. ULIBARRI,

Defendant.

---

# INDICTMENT

---

The Grand Jury charges:

## INTRODUCTION

At all times relevant to this Indictment:

1. Defendant RYAN L. ULIBARRI ("ULIBARRI") was a United States ("U.S.") citizen residing in Fort Collins, Colorado and New Mexico.

2. From in or around 2010 and continuing through the date of this Indictment, ULIBARRI was a dentist licensed to practice in Colorado and New Mexico.

3. From at least in or around April 2014 and continuing until the date of this Indictment, ULIBARRI owned and operated a dental practice in Fort Collins, Colorado called RYAN L ULIBARRI DDS d/b/a ULIBARRI FAMILY DENTISTRY, which offered cosmetic, general, and pediatric dental care to patients. ULIBARRI earned income from his dental practice both in the form of profits generated by the business and in wages he paid himself.

4. From at least in or around March 2016 and continuing until the date of this

Indictment, ULIBARRI was the only dentist practicing at ULIBARRI FAMILY DENTISTRY.

**Tax Terms, Forms, and Schedules**

5. The Internal Revenue Service ("IRS") was an agency of the U.S. Department of the Treasury responsible for enforcing and administering the tax laws of the United States and collecting taxes owed to the U.S. Department of the Treasury.

6. IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040") was used by some U.S. taxpayers to file an annual income tax return.

7. Schedule E, Supplemental Income and Loss was an IRS form that was attached to a Form 1040, when applicable, and used by taxpayers to report income or loss generated from certain businesses, including limited liability corporations ("LLCs"), partnerships, and S Corporations.

8. IRS Form 1065, U.S. Return of Partnership Income ("Form 1065") was used by partnerships to file an annual income tax return. Under the Internal Revenue Code and associated regulations, a domestic LLC with at least two members (a "multi-member LLC") was classified as a partnership for federal income tax purposes unless it elected to be treated as a corporation.

9. IRS Form 1120-S, U.S. Income Tax Return for an S Corporation ("Form 1120-S") was used by businesses that elected to be treated as an S Corporation to file an annual income tax return.

10. An S Corporation was a corporation that elected to pass corporate income, losses, deductions, and credits to the shareholders for federal tax purposes.

11. "Pass-through" income was a term used to describe the income from certain entities such as LLCs, partnerships, and S Corporations because the entity itself did not pay taxes on its income and instead "passed" that income to the entity's members,

partners, or owners.

12. IRS Form 1041, U.S. Income Tax Return for Estates and Trusts ("Form 1041") was used by some trusts and estates to file an annual income tax return.

13. Schedule K-1, Partner's Share of Income, Deductions, Credits, etc. was an IRS form that was attached to a Form 1065 and used by certain business entities to report a partner's share of income and deductions.

14. Schedule K-1, Shareholder's Share of Income, Deductions, Credits, etc. was an IRS form that was attached to a Form 1120-S and used by S Corporations to report a shareholder's share of income and deductions.

15. Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, etc. was an IRS form that was attached to a Form 1041, when applicable, and used by trusts to report a distribution to a beneficiary.

16. IRS Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code ("Form 1023") was a form that a private foundation filed with the IRS to apply for tax-exempt status.

17. IRS Form 1023-EZ, Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code ("Form 1023-EZ") was a streamlined form that certain eligible private foundations could file in lieu of a Form 1023 when applying for tax-exempt status.

18. IRS Form 990-PF, Return of Private Foundation ("Form 990-PF") was a form used by tax-exempt private foundations and other tax-exempt entities to file an annual information return and report charitable distributions and activities.

**Definitions and Tax Rules for Trusts & Foundations**

19. Under the Internal Revenue Code and associated regulations, a trust was

an arrangement in which a trustee took title to property for the purpose of protecting or conserving it for the beneficiary. Trusts were formed under state law, either by a will or by the signing of a trust agreement (also called a "trust instrument"). A trust involved three distinct parties: a grantor, a beneficiary, and a trustee.

20. A grantor was the party that initially conveyed money, property, or other assets to the trust and thereby relinquished legal title of the property to the trust.

21. A beneficiary was the party that benefitted from the assets conveyed to the trust.

22. A trustee was the party responsible for managing the trust's assets for the benefit of the beneficiary.

23. A grantor trust was a trust over which the grantor retained the power to control and direct the trust's income and assets. When the grantor retained control of the trust assets, the income of the trust was taxed to the grantor, meaning that the grantor had a duty to report such income on the grantor's Form 1040 and pay any federal income tax owed on that income.

24. A non-grantor trust was a trust over which the grantor did not retain the power to control and direct the trust's assets and instead conveyed that power to an independent trustee. The trustee was responsible for filing a Form 1041 reporting the non-grantor trust's annual income and paying any federal income tax owed on that income on the trust's behalf.

25. A business trust was a type of trust generally created by its beneficiaries and used to carry on a profit-making activity. When a taxpayer carried on a profit-making business in the form of a business trust, the Internal Revenue Code and associated

regulations provided that the business was to be taxed as a business entity.

26. The Internal Revenue Code allowed non-grantor trusts to deduct costs which were paid or incurred in connection with the administration of the trust and which would not have been incurred if the property were not held in such trust.

27. The Internal Revenue Code also allowed non-grantor trusts to deduct Distributable Net Income ("DNI"), which included the amounts paid, credited, or required to be distributed from the trust to its beneficiaries. Distributions from the trust to its beneficiaries were taxable to the beneficiary, meaning that the beneficiary had a duty to report the distribution as income on the beneficiary's tax return and pay any federal income tax owed on that distribution.

28. If a trust lacked "economic substance," the IRS deemed the trust to be a sham trust and reassigned the trust's income to the grantor in his or her individual capacity. The grantor was then responsible for reporting the trust's income on a Form 1040 and paying taxes on that income.

29. Under the Internal Revenue Code, a transaction (e.g., the creation of a trust) had economic substance if it met two requirements: First, the transaction meaningfully changed the taxpayer's economic position apart from federal income tax effects and, second, the taxpayer had a substantial purpose—apart from tax avoidance—for entering such transaction.

30. A private foundation was an organization that could achieve federal tax-exempt status if it was organized and operated exclusively for one or more purposes set forth in the Internal Revenue Code, including charitable, religious, educational, and scientific purposes, among others. An organization was not tax-exempt under the Internal

Revenue Code if any part of the net earnings inured to the benefit of any private shareholder or individual. To achieve federal tax-exempt status, a private foundation was required to file a Form 1023 or Form 1023-EZ.

31. An Exemption Determination Letter was a letter that the IRS issued to an organization if the organization's application and supporting documents established that it met the particular requirements of the section under which the organization claimed tax-exempt status. The IRS issued an Exemption Determination Letter based on the representations made in the organization's application and supporting documents. If the organization did not operate exclusively for one or more purposes set forth in the Internal Revenue Code but represented on its application and supporting documents that it did, that organization was not tax-exempt.

32. Taxpayers, including non-grantor trusts, could claim a tax deduction for a charitable contribution made within that tax year. To claim a charitable contribution tax deduction, the taxpayer was required to completely relinquish dominion and control over the donated property and could not retain enjoyment of the assets or property donated or otherwise expect a substantial benefit in return.

## ULIBARRI'S TAX EVASION SCHEME

33. From in or around August 2016 and continuing until date of this Indictment, ULIBARRI used an abusive tax shelter involving sham trusts (hereinafter, the "Abusive-Trust Tax Shelter") to fraudulently conceal substantial income from the IRS and to avoid paying taxes on that income. As a result, ULIBARRI evaded paying more than $1,000,000 in federal income taxes owed.

### The Abusive-Trust Tax Shelter

34. The Abusive-Trust Tax Shelter was promoted and sold to U.S. business

owners nationwide by, among others, Larry E. Conner ("Conner"). Conner and others taught individuals (referred to as "clients") who purchased the Abusive-Trust Tax Shelter how to evade taxes on nearly all their business income by using a series of sham trusts designed to receive the client's income, hold title to the client's assets, and pay for the client's personal expenses.

35. The Abusive-Trust Tax Shelter typically consisted of three purported non-grantor trusts and a purported charitable foundation, which was also organized as a trust. For a fee, Conner procured trust instruments purporting to create these entities, including one longer version that clients were instructed to keep strictly confidential as well as a second shorter version and a certification of trustee form, which clients could provide to banks to open trust bank accounts and apply for loans. The purported trusts were successively layered, meaning that each trust named the next trust in the series as its beneficiary.

36. To use the Abusive-Trust Tax Shelter, clients nominally assigned nearly all of their business income to a sham business trust to create the illusion that the income assigned to the sham trust was not earned by the client. In reality, however, the client continued to retain full use and control over the income assigned to the sham business trust. The sham business trust then distributed its income to a second sham trust (referred to as a "family trust"), which, in turn, distributed its income to a third sham trust (referred to as "charitable trust"). On trust tax returns, each trust in the series reported deductions and distributions matching or exceeding its income, and the sham charitable trust purportedly "donated" any remaining income to a purported tax-exempt private family foundation. Finally, funds "donated" to the private family foundation would be "loaned" to

the client's business, business trust, or family trust so that the client could retain full control and beneficial use of those funds. As a result, the clients avoided paying income taxes on nearly all of their business income.

37. Clients also transferred real estate and other assets, such as life insurance policies and vehicles, to their sham trusts to create the illusion that they did not own and control those assets. Clients opened bank accounts in the names of their trusts and used funds held in those accounts to pay for expenses relating to those assets, among other personal expenses—such as mortgage payments, life insurance premiums, and vehicle financing payments—and claimed those costs as deductions on trust tax returns, thereby improperly reducing their taxes owed.

38. Despite this reassignment of income and assets to sham trusts, the clients continued to operate their businesses as if nothing had changed. They retained complete control over and benefit from their businesses, the income generated by their businesses, and all assets transferred to their trusts.

**Ulibarri's Use of the Abusive-Trust Tax Shelter**

39. On or about August 16, 2016, ULIBARRI purchased the Abusive-Trust Tax Shelter from Conner for $50,000.

40. ULIBARRI's trust structure consisted of a business trust called SMILE HIGH TRUST, a family trust called TITLE OF LIBERTY FAMILY TRUST, a charitable trust called ROD OF IRON CHARITABLE TRUST, and a private family foundation called FAITH HOPE & TRUST FOUNDATION. ULIBARRI set up these entities to conceal income that he earned from ULIBARRI FAMILY DENTISTRY from the IRS. Specifically, and as described in further detail below, ULIBARRI assigned nearly all income generated by his

dental practice to SMILE HIGH TRUST and then funneled that income through each trust and foundation in the series, as depicted in the image below.




41. The trusts and private family foundation named above were sham entities devoid of economic substance and served no legitimate business purpose. After creating the sham trusts and foundation, ULIBARRI retained complete control over ULIBARRI FAMILY DENTISTRY, SMILE HIGH TRUST, TITLE OF LIBERTY FAMILY TRUST, ROD OF IRON CHARITABLE TRUST, FAITH HOPE & TRUST FOUNDATION, and all income and assets assigned to and generated by those entities. The following sections describe ULIBARRI's use of each of these entities to carry out the Abusive-Trust Tax Shelter.

*Ryan L Ulibarri DDS d/b/a Ulibarri Family Dentistry*

42. ULIBARRI initially set up his dental practice as a Professional Corporation ("PC") under Colorado law on or about April 11, 2014. The business's legal name was RYAN L ULIBARRI DDS, PC, and ULIBARRI was listed as the sole owner.

43. About three months after purchasing the Abusive-Trust Tax Shelter, however, ULIBARRI converted, and caused to be converted, his dental practice from a

PC into an LLC to fit the requirements of the Abusive-Trust Tax Shelter. The business's legal name then became RYAN L ULIBARRI DDS, LLC.

44. ULIBARRI re-structured his dental practice despite having been warned that a trust could not own a dental practice under Colorado law. For example, on or about October 4, 2016, ULIBARRI emailed Conner and an individual who was an attorney and Certified Public Accountant ("Individual 1"), asking: "can a dental S corporation be converted over to an LLC and if so can a business trust be named as a participating member of the LLC[?]" In an emailed response to ULIBARRI and Conner, Individual 1 made the following statements, among others:

a. "What a wacky structure. Why would you want to do this?"

b. "I don't believe a trust would be a valid owner of a dental practice."

c. "Once a client ask [sic] me about a trust, I am having to explain to my clients about why a trust is inappropriate and a 'wacky' option presented by someone trying to sell my client something."

45. Once ULIBARRI re-structured his dental practice, he terminated his existing business banking relationships and sought out a new bank that was not familiar with the dental practice before its purported reorganization. To do so, ULIBARRI transferred nearly all the funds from a bank account he previously used for the dental practice at a U.S. financial institution ("Bank A") into a new bank account with a different U.S. financial institution ("Bank B"). He then closed the account with Bank A.

46. Despite this restructuring and movement of funds, ULIBARRI continued to operate his dental practice as if nothing had changed and retained complete control over and benefit from the practice and its income. For example, ULIBARRI and his spouse

(hereinafter, "Y.U.") were the sole authorized signers for the accounts at Bank A and Bank B in the names of RYAN L ULIBARRI DDS, PC and RYAN L ULIBARRI DDS, LLC, respectively. From 2014 through 2016, ULIBARRI deposited and caused to be deposited over $1,000,000 into RYAN L ULIBARRI DDS, PC's bank account at Bank A. And from 2017 through 2022, he deposited and caused to be deposited over $8,000,000 into RYAN L ULIBARRI DDS, LLC's bank account at Bank B.

47. ULIBARRI filed and caused to be filed with the IRS income tax returns for his dental practice both before and after the restructuring. For tax years 2015 and 2016, ULIBARRI elected to treat his dental practice as an S Corporation and filed and caused to be filed Forms 1120-S, which assigned 100% of the practice's profits to ULIBARRI individually via a Schedule K-1. For tax years 2017 through 2022, however, ULIBARRI filed and caused to be filed Forms 1065, which assigned 90% of the business's profits or losses to SMILE HIGH TRUST and 10% to ULIBARRI and/or Y.U. individually. The following chart summarizes the information reported on these returns.

| Tax Year | Type of Return | Total Income | Total Deductions | Profits or Losses |
|---|---|---|---|---|
| 2015 | Form 1120-S | $1,402,239 | $945,805 | $456,434 |
| 2016 | Form 1120-S | $1,308,568 | $953,815 | $354,753 |
| 2017 | Form 1065 | $1,361,865 | $801,399 | $560,466 |
| 2018 | Form 1065 | $1,290,742 | $684,990 | $605,752 |
| 2019 | Form 1065 | $1,345,692 | $620,954 | $724,738 |
| 2020 | Form 1065 | $982,540 | $483,052 | $499,488 |
| 2021 | Form 1065 | $1,240,489 | $1,342,776 | -$102,287 |

| | | | | |
|---|---|---|---|---|
| 2022 | Form 1065 | $1,295,310 | $1,274,956 | $20,354 |

48. Contrary to the representations on ULIBARRI FAMILY DENTISTRY's tax returns for tax years 2017 through 2022 that SMILE HIGH TRUST owned 90% of the dental practice and that ULIBARRI and/or Y.U. owned 10%, ULIBARRI made inconsistent representations about his ownership interest in his dental practice to various banks and lenders between 2016 and 2022. For example, on some occasions he represented that he owned 100% of the dental practice. On others, he represented that SMILE HIGH TRUST owned 99% of the practice and he owned 1%. And yet elsewhere, he represented that SMILE HIGH TRUST owned 40% of the practice and he owned 60%.

49. Despite these inconsistent representations about the ownership of ULIBARRI FAMILY DENTISTRY, ULIBARRI knew that he earned, controlled, and directly benefitted from his dental practice's income. Accordingly, the Forms 1065 filed for tax years 2017 through 2022 were false. As the owner of his dental practice, ULIBARRI should have reported the business's income on his Forms 1040 and paid taxes on that income, which he did not do.

*Smile High Trust*

50. In or around August 2016, ULIBARRI and Y.U. purported to create an irrevocable, non-grantor "Pure Trust Organization in Common Law," which they named SMILE HIGH TRUST and referred to as a "business trust." About three months later, ULIBARRI opened a bank account at Bank B in the name of SMILE HIGH TRUST, for which ULIBARRI and Y.U. had sole signature authority.

51. Between in or around November 2017 and in or around December 2022, ULIBARRI transferred and caused to be transferred over $3,000,000 from the RYAN L

ULIBARRI DDS, LLC account at Bank B to the SMILE HIGH TRUST account at Bank B. ULIBARRI used the funds held in the SMILE HIGH TRUST bank account to pay for various personal expenses.

52. ULIBARRI knowingly prepared, signed, filed, and caused to be prepared, signed, and filed false Forms 1041 on behalf of SMILE HIGH TRUST for tax years 2017 through 2022 that fraudulently reported 90% of the income ULIBARRI personally earned from ULIBARRI FAMILY DENTISTRY. ULIBARRI did so despite knowing that he retained full dominion and control over, and directly benefited from, that income. Thereafter, ULIBARRI completely offset the reported income by claiming deductions for expenses, including for personal expenses, and income distributions ("Income Distribution Deductions" or "IDD") to TITLE OF LIBERTY FAMILY TRUST. As a result, these Forms 1041 reported no tax due for each year, as summarized below.

| Tax Year | Total Income | Other Deductions | IDD | Tax Due |
|---|---|---|---|---|
| 2017 | $504,419 | $132,344 | $372,075 | $0 |
| 2018 | $586,466 | $96,917 | $489,549 | $0 |
| 2019 | $652,264 | $24,456 | $627,808 | $0 |
| 2020 | $449,539 | $4,677 | $444,862 | $0 |
| 2021 | $729,000 | $150,725 | $578,275 | $0 |
| 2022 | $606,000 | $79,378 | $523,022 | $0 |

*Title of Liberty Family Trust*

53. In or around August 2016, ULIBARRI and Y.U. purported to create an irrevocable, non-grantor "Pure Trust Organization in Common Law," which they named TITLE OF LIBERTY FAMILY TRUST and referred to as a "family trust." About one month

later, ULIBARRI opened a bank account at Bank B in the name of TITLE OF LIBERTY FAMILY TRUST, for which ULIBARRI and Y.U. had sole signature authority.

54. Between in or around January 2017 and in or around December 2022, ULIBARRI transferred and caused to be transferred over $3,000,000 from the SMILE HIGH TRUST account at Bank B to the TITLE OF LIBERTY FAMILY TRUST account at Bank B. ULIBARRI used the funds held in the TITLE OF LIBERTY FAMILY TRUST bank account to pay for various personal expenses, including, among others, over $1,000,000 for life insurance premiums, hundreds of thousands of dollars in mortgage loan repayments for ULIBARRI's personal residence, and hundreds of thousands of dollars in personal credit card bill payments.

55. On or about November 9, 2020, ULIBARRI sent an email to Suzanne B. Thompson ("Thompson") acknowledging that he paid for virtually all his personal expenses through TITLE OF LIBERTY FAMILY TRUST. Thompson offered bookkeeping and accounting services for a fee to clients who purchased the Abusive-Trust Tax Shelter, including ULIBARRI, through a business she owned and operated called The CFO Agency, LLC. Specifically, ULIBARRI wrote to Thompson, among other statements: "As you know we have been handling all of our personal expenses through the Family Trust. This includes the mortgage, car payments, medical expenses, utilities, etc."

56. ULIBARRI knowingly prepared, signed, filed, and caused to be prepared, signed, and filed false Forms 1041 on behalf of TITLE OF LIBERTY FAMILY TRUST for tax years 2017 through 2022 that fraudulently reported income purportedly distributed to it from SMILE HIGH TRUST. Those tax returns also reported fraudulent deductions, including for personal expenses and income distributions to ROD OF IRON CHARITABLE

TRUST. As a result, these Forms 1041 reported practically no tax due for each year, as summarized below.

| Tax Year | Total Income | Other Deductions | IDD | Tax Due |
|---|---|---|---|---|
| 2017 | $372,075 | $276,108 | $10,137 | $0 |
| 2018 | $541,406 | $332,590 | $208,816 | $0 |
| 2019 | $629,942 | $382,316 | $247,626 | $0 |
| 2020 | $463,128 | $242,109 | $211,334 | $185 |
| 2021 | $627,923 | $580,131 | $15,000 | $244 |
| 2022 | $657,745 | $621,912 | $33 | $0 |

*Rod of Iron Charitable Trust*

57. In or around August 2016, ULIBARRI and Y.U. purported to create an irrevocable, non-grantor "Pure Trust Organization in Common Law," which they named ROD OF IRON CHARITABLE TRUST and referred to as a "charitable trust." About one month later, ULIBARRI opened a bank account at Bank B in the name of ROD OF IRON CHARITABLE TRUST, for which ULIBARRI and Y.U. had sole signature authority.

58. Between in or around December 2016 and in or around December 2022, ULIBARRI transferred and caused to be transferred over $100,000 from the TITLE OF LIBERTY FAMILY TRUST account at Bank B to the ROD OF IRON CHARITABLE TRUST account at Bank B.

59. ULIBARRI knowingly prepared, signed, filed, and caused to be prepared, signed, and filed false Forms 1041 on behalf of ROD OF IRON CHARITABLE TRUST for tax years 2017 through 2022. Those tax returns fraudulently reported income purportedly distributed to it from TITLE OF LIBERTY FAMILY TRUST and fraudulent deductions,

including charitable deductions claimed for funds that ULIBARRI continued to control and benefit from after purportedly donating those funds. As a result, these Forms 1041 reported no tax due for each year, as summarized below.

| Tax Year | Total Income | Charitable Deductions | Other Deductions | Tax Due |
|---|---|---|---|---|
| 2017 | $95,967 | $72,919 | $23,048 | $0 |
| 2018 | $209,010 | $204,528 | $4,482 | $0 |
| 2019 | $247,626 | $0 | $247,626 | $0 |
| 2020 | $211,334 | $0 | $211,333 | $0 |
| 2021 | $15,000 | $15,000 | $180 | $0 |
| 2022 | $0 | $12,975 | $215 | $0 |

*Faith Hope & Trust Foundation*

60. In or around August 2016, ULIBARRI and Y.U. purported to create a charity which they named FAITH HOPE & TRUST FOUNDATION and referred to as a "private family foundation." About two weeks later, ULIBARRI opened a bank account at Bank B in the name of FAITH HOPE & TRUST FOUNDATION, for which ULIBARRI and Y.U. had sole signature authority.

61. Between in or around January 2017 and in or around October 2022, ULIBARRI transferred and caused to be transferred over $100,000 from the ROD OF IRON CHARITABLE TRUST account at Bank B to the FAITH HOPE & TRUST FOUNDATION account at Bank B. ULIBARRI used the funds held in the FAITH HOPE & TRUST FOUNDATION bank account to pay for various personal expenses, including season tickets for a professional baseball team based in Colorado.

62. ULIBARRI knowingly prepared, signed, filed, and caused to be prepared,

signed, and filed false Forms 990-PF on behalf of FAITH HOPE & TRUST FOUNDATION for tax years 2016 through 2022 that fraudulently reported purported charitable contributions received by FAITH HOPE & TRUST FOUNDATION, including funds that ULIBARRI purported to donate to FAITH HOPE & TRUST FOUNDATION. In reality, however, ULIBARRI retained full dominion and control over such funds, and directly benefitted from them, including by causing FAITH HOPE & TRUST FOUNDATION to "loan" funds to ULIBARRI FAMILY DENTISTRY. Those Forms 990-PF also fraudulently reported certain personal expenses as charitable expenses. Because FAITH HOPE & TRUST FOUNDATION was improperly designated as tax-exempt based on ULIBARRI's fraudulent representations to the IRS, FAITH HOPE & TRUST FOUNDATION paid no tax on any purported contributions it received.

**Ulibarri's Individual Income Tax Returns**

63. ULIBARRI prepared, signed, and filed with the IRS, and caused to be prepared, signed, and filed, Forms 1040 jointly with Y.U. reporting income, deductions, and tax due for tax years 2015 through 2022, as summarized below.

| Tax Year | Total Income | Total Deductions | Total Tax Due |
|---|---|---|---|
| 2015 | $546,563 | $12,400 | $161,843 |
| 2016 | $456,048 | $12,600 | $95,105 |
| 2017 | $60,201 | $93,345 | $159 |
| 2018 | $72,575 | $12,700 | $0 |
| 2019 | $72,474 | $24,000 | $0 |
| 2020 | $49,949 | $24,400 | $7,058 |

| | | | |
|---|---|---|---|
| 2021 | $0 | $24,800 | $0 |
| 2022 | $25,482 | $25,100 | $287 |

64. During each year listed above, ULIBARRI owned and operated ULIBARRI FAMILY DENTISTRY. As the owner, ULIBARRI was required to report all of ULIBARRI FAMILY DENTISTRY's annual income or losses on his Forms 1040. For tax years 2015 and 2016, ULIBARRI reported 100% of ULIBARRI FAMILY DENTISTRY's income on his individual tax returns. For tax years 2017 through 2022, however, ULIBARRI improperly reported only 10% of ULIBARRI FAMILY DENTISTRY's income on his individual tax returns. As a result, ULIBARRI did not pay federal income tax on the vast majority of income he earned as a practicing dentist and business owner during those years, which he should have done.

**COUNT 1**
**26 U.S.C. § 7201**
(Evasion of Assessment of Taxes for Tax Year 2017)

65. The allegations set forth in Paragraphs 1 through 64 of this Indictment are re-alleged and incorporated as if set forth fully herein.

66. From on or about August 16, 2016, through on or about November 13, 2018, in the District of Colorado and elsewhere, defendant RYAN L. ULIBARRI willfully attempted to evade and defeat a substantial amount of income tax due and owing by him and his spouse to the United States of America for calendar year 2017 by committing the following affirmative acts of evasion, among others:

a. On or about August 16, 2016, ULIBARRI purchased the Abusive-Trust Tax Shelter by causing $50,000 to be electronically transferred to Conner from an account in ULIBARRI's and Y.U.'s names at Bank A, account number

ending in 5748.

b. On or about August 22, 2016, ULIBARRI signed a trust instrument titled “Declaration of Trust Agreement” that purported to create FAITH HOPE & TRUST FOUNDATION as a private foundation. In this document, ULIBARRI named himself as the “Founder,” “Donor,” and “Trustee” of FAITH HOPE & TRUST FOUNDATION and falsely claimed that he created the purported foundation “exclusively for charitable . . . purposes[.]”

c. On or about August 30, 2016, ULIBARRI signed a trust instrument that purported to create SMILE HIGH TRUST as an irrevocable “Pure Trust Organization in Common Law.” ULIBARRI named himself as trustee of SMILE HIGH TRUST and falsely named a friend (“Individual 2”) as the grantor even though Individual 2 never conveyed any money, property, or other assets to SMILE HIGH TRUST.

d. On or about August 30, 2016, ULIBARRI signed a trust instrument that purported to create TITLE OF LIBERTY FAMILY TRUST as an irrevocable “Pure Trust Organization in Common Law.” ULIBARRI named himself as trustee of TITLE OF LIBERTY FAMILY TRUST and falsely named Individual 2 as the grantor.

e. On or about August 30, 2016, ULIBARRI signed a trust instrument that purported to create ROD OF IRON CHARITABLE TRUST as an irrevocable “Pure Trust Organization in Common Law.” ULIBARRI named himself as trustee of ROD OF IRON CHARITABLE TRUST and falsely named Individual 2 as the grantor.

f. On or about September 15, 2016, ULIBARRI opened and maintained thereafter a bank account for FAITH HOPE & TRUST FOUNDATION at Bank B, account number ending in 1420, for which ULIBARRI and Y.U. were the sole authorized signers.

g. On or about September 22, 2016, ULIBARRI opened and maintained thereafter a bank account for TITLE OF LIBERTY FAMILY TRUST at Bank B, account number ending in 5933, for which ULIBARRI and Y.U. were the sole authorized signers.

h. On or about September 22, 2016, ULIBARRI opened and maintained thereafter a bank account for ROD OF IRON CHARITABLE TRUST at Bank B, account number ending in 1845, for which ULIBARRI and Y.U. were the sole authorized signers.

i. On or about September 28, 2016, ULIBARRI signed and submitted, and caused to be signed and submitted, to the IRS a Form 1023-EZ seeking tax exemption for FAITH HOPE & TRUST FOUNDATION, which falsely attested that FAITH HOPE & TRUST FOUNDATION would not pay for any individuals' expenses nor engage in any financial transaction with the foundation's trustees, or any entities owned or controlled by the trustees.

j. On or about December 8, 2016, ULIBARRI opened and maintained thereafter a bank account in the name RYAN L ULIBARRI DDS, LLC at Bank B, account number ending in 1347, for which ULIBARRI and Y.U. were the sole authorized signers. On the Business Account Application, ULIBARRI listed himself as the "1% owner" of his dental practice and SMILE

HIGH TRUST as the "99% owner."

k. On or about December 8, 2016, ULIBARRI opened and maintained a bank account for SMILE HIGH TRUST at Bank B, account number ending in 1225, for which ULIBARRI and Y.U. were the sole authorized signers.

l. On or about December 29, 2016, ULIBARRI purported to convey his personal residence in Larimer County, Colorado by quitclaim deed to TITLE OF LIBERTY FAMILY TRUST. ULIBARRI and Y.U., however, maintained complete and beneficial use of the property after transferring title to TITLE OF LIBERTY FAMILY TRUST.

m. On or about January 3, 2017, ULIBARRI wrote and signed a check payable to RYAN L ULIBARRI DDS, LLC for $75,000 from an account in the name of RYAN L ULIBARRI DDS, PC at Bank A, account number ending in 4478, and then endorsed and deposited the check into RYAN L ULIBARRI DDS, LLC's Bank B account ending in 1347.

n. On or about February 21, 2017, ULIBARRI closed RYAN L ULIBARRI DDS, PC's Bank A account ending in 4478.

o. On or about September 6, 2018, ULIBARRI signed a document titled "Certification of Trustee" for SMILE HIGH TRUST, which he provided to banks and others to conduct financial transactions consistent with the Abusive-Trust Tax Shelter. This document listed ULIBARRI as trustee of SMILE HIGH TRUST and falsely listed another friend ("Individual 3") as the grantor.

p. On or about September 6, 2018, ULIBARRI signed a document titled

"Certification of Trustee" for TITLE OF LIBERTY FAMILY TRUST, which he provided to banks and others to conduct financial transactions consistent with the Abusive-Trust Tax Shelter. This document listed ULIBARRI as trustee of TITLE OF LIBERTY FAMILY TRUST and falsely listed Individual 3 as the grantor.

q. On or about September 6, 2018, ULIBARRI signed a document titled "Certification of Trustee" for ROD OF IRON CHARITABLE TRUST, which he provided to banks and others to conduct financial transactions consistent with the Abusive-Trust Tax Shelter. This document listed ULIBARRI as trustee of ROD OF IRON CHARITABLE TRUST and falsely listed Individual 3 as the grantor.

r. On or about September 13, 2018, ULIBARRI filed and caused to be filed with the IRS a Form 1065 on behalf of ULIBARRI FAMILY DENTISTRY for tax year 2017 that included a Schedule K-1 fraudulently assigning 90% of ULIBARRI FAMILY DENTISTRY's ordinary business income for tax year 2017 to SMILE HIGH TRUST despite having retained full control over and benefit from that income.

s. On or about September 27, 2018, ULIBARRI filed and caused to be filed with the IRS a false and fraudulent joint Form 1040 for tax year 2017 that materially underreported ULIBARRI's total income and tax liability for tax year 2017.

t. On or about September 27, 2018, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of SMILE HIGH TRUST for tax

year 2017 that fraudulently assigned to SMILE HIGH TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2017.

u. On or about September 27, 2018, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of TITLE OF LIBERTY FAMILY TRUST for tax year 2017 that fraudulently assigned to TITLE OF LIBERTY FAMILY TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2017.

v. On or about September 27, 2018, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of ROD OF IRON CHARITABLE TRUST for tax year 2017 that fraudulently assigned to ROD OF IRON CHARITABLE TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2017.

w. On or about September 28, 2018, ULIBARRI filed and caused to be filed with the IRS a false Form 990-PF on behalf of FAITH HOPE & TRUST FOUNDATION for tax year 2017 that fraudulently assigned to FAITH HOPE & TRUST FOUNDATION income that ULIBARRI earned, controlled, and benefitted from individually during 2017.

x. On or about October 7, 2018, ULIBARRI signed a second, shorter version of the trust instrument for TITLE OF LIBERTY FAMILY TRUST, titled "Banking Documents," which he provided to banks and others to conduct financial transactions consistent with the Abusive-Trust Tax Shelter.

y. On or about October 7, 2018, ULIBARRI signed a second, shorter version of the trust instrument for ROD OF IRON CHARITABLE TRUST, titled

"Banking Documents," which he provided to banks and others to conduct financial transactions consistent with the Abusive-Trust Tax Shelter.

z. On or about October 29, 2018, ULIBARRI signed a second, shorter version of the trust instrument for SMILE HIGH TRUST, titled "Banking Documents," which he provided to banks and others to conduct financial transactions consistent with the Abusive-Trust Tax Shelter.

aa. On or about November 13, 2018, ULIBARRI signed and caused to be notarized a fraudulent document titled "OPERATING AGREEMENT of RYAN L ULIBARRI DDS, LLC," which purported to create ULIBARRI FAMILY DENTISTRY as an LLC on November 30, 2016. ULIBARRI named SMILE HIGH TRUST as the 90% owner of ULIBARRI FAMILY DENTISTRY, Y.U. as a 5% owner, and himself as a 5% owner.

In violation of Title 26, United States Code, Section 7201.

**COUNT 2**
**26 U.S.C. § 7201**
(Evasion of Assessment of Taxes for Tax Year 2018)

67. The allegations set forth in Paragraphs 1 through 64 of this Indictment are re-alleged and incorporated as if set forth fully herein.

68. From on or about August 16, 2016, through on or about January 28, 2021, in the District of Colorado and elsewhere, defendant RYAN L. ULIBARRI willfully attempted to evade and defeat a substantial amount of income tax due and owing by him and his spouse to the United States of America for calendar year 2018 by committing the following affirmative acts of evasion, among others:

a. The acts described in Paragraphs 66(a)–(q) and 66(x)–(z) of this Indictment.

b. On or about August 29, 2019, ULIBARRI filed and caused to be filed with the IRS a Form 1065 on behalf of ULIBARRI FAMILY DENTISTRY for tax year 2018 that included a Schedule K-1 fraudulently assigning 90% of ULIBARRI FAMILY DENTISTRY's ordinary business income for tax year 2018 to SMILE HIGH TRUST despite having retained full control over and benefit from that income.

c. On or about August 29, 2019, ULIBARRI filed and caused to be filed with the IRS a false and fraudulent joint Form 1040 for tax year 2018 that materially underreported ULIBARRI's total income and tax liability.

d. On or about August 29, 2019, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of SMILE HIGH TRUST for tax year 2018 that fraudulently assigned to SMILE HIGH TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2018.

e. On or about August 29, 2019, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of TITLE OF LIBERTY FAMILY TRUST for tax year 2018 that fraudulently assigned to TITLE OF LIBERTY FAMILY TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2018.

f. On or about August 29, 2019, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of ROD OF IRON CHARITABLE TRUST for tax year 2018 that fraudulently assigned to ROD OF IRON CHARITABLE TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2018.

g. On or about August 29, 2019, ULIBARRI filed and caused to be filed with the IRS a false Form 990-PF on behalf of FAITH HOPE & TRUST FOUNDATION for tax year 2018 that fraudulently assigned to FAITH HOPE & TRUST FOUNDATION income that ULIBARRI earned, controlled, and benefitted from individually during 2018.

h. On or about January 28, 2021, ULIBARRI altered and caused to be altered the purported operating agreement for ULIBARRI FAMILY DENTISTRY, described in Paragraph 66(aa) of this Indictment, by deleting any reference to Y.U.'s ownership interest and by changing his purported ownership interest from 5% to 10%. Despite these changes, ULIBARRI attached the original signature page, which included a notary stamp, to the altered version of the document to create the illusion that the altered document was both drafted and notarized in November 2018.

In violation of Title 26, United States Code, Section 7201.

**COUNT 3**
**26 U.S.C. § 7201**
(Evasion of Assessment of Taxes for Tax Year 2019)

69. The allegations set forth in Paragraphs 1 through 64 of this Indictment are re-alleged and incorporated as if set forth fully herein.

70. From on or about August 16, 2016, through on or about January 28, 2021, in the District of Colorado and elsewhere, defendant RYAN L. ULIBARRI willfully attempted to evade and defeat a substantial amount of income tax due and owing by him and his spouse to the United States of America for calendar year 2019 by committing the following affirmative acts of evasion, among others:

a. The acts described in Paragraphs 66(a)–(q), 66(x)–(z), and 68(h) of this Indictment.

b. On or about July 23, 2020, ULIBARRI filed and caused to be filed with the IRS a Form 1065 on behalf of ULIBARRI FAMILY DENTISTRY for tax year 2019 that included a Schedule K-1 fraudulently assigning 90% of ULIBARRI FAMILY DENTISTRY's ordinary business income for tax year 2019 to SMILE HIGH TRUST despite having retained full control over and benefit from that income.

c. On or about July 23, 2020, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of SMILE HIGH TRUST for tax year 2019 that fraudulently assigned to SMILE HIGH TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2019.

d. On or about July 23, 2020, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of TITLE OF LIBERTY FAMILY TRUST for tax year 2019 that fraudulently assigned to TITLE OF LIBERTY FAMILY TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2019.

e. On or about July 23, 2020, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of ROD OF IRON CHARITABLE TRUST for tax year 2019 that fraudulently assigned to ROD OF IRON CHARITABLE TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2019.

f. On or about July 23, 2020, ULIBARRI filed and caused to be filed with the

IRS a false Form 990-PF on behalf of FAITH HOPE & TRUST FOUNDATION for tax year 2019 that fraudulently assigned to FAITH HOPE & TRUST FOUNDATION income that ULIBARRI earned, controlled, and benefitted from individually during 2019.

g. On or about July 28, 2020, ULIBARRI filed and caused to be filed with the IRS a false and fraudulent joint Form 1040 for tax year 2019 that materially underreported ULIBARRI's total income and tax liability for tax year 2019.

In violation of Title 26, United States Code, Section 7201.

**COUNT 4**
**26 U.S.C. § 7201**
(Evasion of Assessment of Taxes for Tax Year 2020)

71. The allegations set forth in paragraphs 1 through 64 of this Indictment are re-alleged and incorporated as if set forth fully herein.

72. From on or about August 16, 2016, through on or about September 17, 2021, in the District of Colorado and elsewhere, defendant RYAN L. ULIBARRI willfully attempted to evade and defeat a substantial amount of income tax due and owing by him and his spouse to the United States of America for calendar year 2020 by committing the following affirmative acts of evasion, among others:

a. The acts described in Paragraphs 66(a)–(q), 66(x)–(z), and 68(h) of this Indictment.

b. On or about September 15, 2021, ULIBARRI filed and caused to be filed with the IRS a Form 1065 on behalf of ULIBARRI FAMILY DENTISTRY for tax year 2020 that included a Schedule K-1 fraudulently assigning 90% of ULIBARRI FAMILY DENTISTRY's ordinary business income for tax year

2020 to SMILE HIGH TRUST despite having retained full control over and benefit from that income.

c. On or about September 16, 2021, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of SMILE HIGH TRUST for tax year 2020 that fraudulently assigned to SMILE HIGH TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2020.

d. On or about September 16, 2021, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of TITLE OF LIBERTY FAMILY TRUST for tax year 2020 that fraudulently assigned to TITLE OF LIBERTY FAMILY TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2020.

e. On or about September 16, 2021, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of ROD OF IRON CHARITABLE TRUST for tax year 2020 that fraudulently assigned to ROD OF IRON CHARITABLE TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2020.

f. On or about September 16, 2021, ULIBARRI filed and caused to be filed with the IRS a false Form 990-PF on behalf of FAITH HOPE & TRUST FOUNDATION for tax year 2020 that fraudulently assigned to FAITH HOPE & TRUST FOUNDATION income that ULIBARRI earned, controlled, and benefitted from individually during 2020.

g. On or about September 17, 2021, ULIBARRI filed and caused to be filed with the IRS a false and fraudulent joint Form 1040 for tax year 2020 that

materially underreported ULIBARRI's total income and tax liability for tax year 2020.

In violation of Title 26, United States Code, Section 7201.

**COUNT 5**
**26 U.S.C. § 7201**
(Evasion of Assessment of Taxes for Tax Year 2021)

73. The allegations set forth in paragraphs 1 through 64 of this Indictment are re-alleged and incorporated as if set forth fully herein.

74. From on or about August 16, 2016, through on or about September 8, 2022, in the District of Colorado and elsewhere, defendant RYAN L. ULIBARRI willfully attempted to evade and defeat a substantial amount of income tax due and owing by him and his spouse to the United States of America for calendar year 2021 by committing the following affirmative acts of evasion, among others:

a. The acts described in Paragraphs 66(a)–(q), 66(x)–(z), and 68(h) of this Indictment.

b. On or about February 5, 2021, ULIBARRI purchased a commercial office building for approximately $725,000 in the name of SMILE HIGH TRUST. Through ULIBARRI FAMILY DENTISTRY, however, ULIBARRI maintained complete control over and beneficial use of the property.

c. On or about September 6, 2022, ULIBARRI filed and caused to be filed with the IRS a false Form 990-PF on behalf of FAITH HOPE & TRUST FOUNDATION for tax year 2021 that fraudulently assigned to FAITH HOPE & TRUST FOUNDATION income that ULIBARRI earned, controlled, and benefitted from individually during 2021.

d. On or about September 7, 2022, ULIBARRI filed and caused to be filed with the IRS a Form 1065 on behalf of ULIBARRI FAMILY DENTISTRY for tax year 2021 that included a Schedule K-1 fraudulently assigning 90% of ULIBARRI FAMILY DENTISTRY's ordinary business income for tax year 2021 to SMILE HIGH TRUST despite having retained full control over and benefit from that income.

e. On or about September 7, 2022, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of SMILE HIGH TRUST for tax year 2021 that fraudulently assigned to SMILE HIGH TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2021.

f. On or about September 7, 2022, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of TITLE OF LIBERTY FAMILY TRUST for tax year 2021 that fraudulently assigned to TITLE OF LIBERTY FAMILY TRUST income that ULIBARRI earned, controlled, and benefitted from individually during 2021.

g. On or about September 7, 2022, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of ROD OF IRON CHARITABLE TRUST for tax year 2021 that fraudulently assigned to ROD OF IRON CHARITABLE TRUST income that ULIBARRI earned, controlled, and benefitted from individually in 2021.

h. On or about September 8, 2022, ULIBARRI filed and caused to be filed with the IRS a false and fraudulent joint Form 1040 for tax year 2021 that materially underreported ULIBARRI's total income and tax liability for tax

year 2021.

In violation of Title 26, United States Code, Section 7201.

**COUNT 6**
**26 U.S.C. § 7201**
(Evasion of Assessment of Taxes for Tax Year 2022)

75. The allegations set forth in paragraphs 1 through 64 of this Indictment are re-alleged and incorporated as if set forth fully herein.

76. From on or about August 16, 2016, through on or about September 6, 2023, in the District of Colorado and elsewhere, defendant RYAN L. ULIBARRI willfully attempted to evade and defeat a substantial amount of income tax due and owing by him and his spouse to the United States of America for calendar year 2022 by committing the following affirmative acts of evasion, among others:

a. The acts described in Paragraphs 66(a)–(q), 66(x)–(z), 68(h), and 74(b) of this Indictment.

b. On or about September 5, 2023, ULIBARRI filed and caused to be filed with the IRS a Form 1065 on behalf of ULIBARRI FAMILY DENTISTRY for tax year 2022 that included a Schedule K-1 fraudulently assigning 90% of ULIBARRI FAMILY DENTISTRY's ordinary business income for tax year 2022 to SMILE HIGH TRUST despite having retained full control over and benefit from that income.

c. On or about September 5, 2023, ULIBARRI filed and caused to be filed with the IRS a false and fraudulent joint Form 1040 for tax year 2022 that materially underreported ULIBARRI's total income and tax liability for tax year 2022.

d. On or about September 5, 2023, ULIBARRI filed and caused to be filed with the IRS a false Form 990-PF on behalf of FAITH HOPE & TRUST FOUNDATION for tax year 2022 that fraudulently assigned to FAITH HOPE & TRUST FOUNDATION income that ULIBARRI earned, controlled, and benefitted from individually in 2022.

e. On or about September 6, 2023, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of SMILE HIGH TRUST for tax year 2022 that fraudulently assigned to SMILE HIGH TRUST income that ULIBARRI earned, controlled, and benefitted from individually in 2022.

f. On or about September 6, 2023, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of TITLE OF LIBERTY FAMILY TRUST for tax year 2022 that fraudulently assigned to TITLE OF LIBERTY FAMILY TRUST income that ULIBARRI earned, controlled, and benefitted from individually in 2022.

g. On or about September 6, 2023, ULIBARRI filed and caused to be filed with the IRS a false Form 1041 on behalf of ROD OF IRON CHARITABLE TRUST for tax year 2022 that fraudulently assigned to ROD OF IRON CHARITABLE TRUST income that ULIBARRI earned, controlled, and benefitted from individually in 2022.

In violation of Title 26, United States Code, Section 7201.

A TRUE BILL:

*Ink Signature on File in Clerk's Office*

FOREPERSON

DAVID A. HUBBERT
Deputy Assistant Attorney General
Department of Justice, Tax Division

*/s/ Amanda R. Scott*
AMANDA R. SCOTT
Trial Attorney
Department of Justice, Tax Division
150 M St. NE
Washington, D.C. 20002
(202) 514-5384
Amanda.R.Scott@usdoj.gov

*/s/ Lauren K. Pope*
LAUREN K. POPE
Trial Attorney
Department of Justice, Tax Division
150 M St. NE
Washington, D.C. 20002
(202) 746-9068
Lauren.K.Pope@usdoj.gov

*Attorneys for the United States*