# AMEDNED AND RESTATED OPERATING AGREEMENT OF RYAN L ULIBARRI DDS, LLC

**A Colorado Limited Liability Company**

This Operating Agreement (referred to as the "Operating Agreement" or the "Agreement") is entered into by and between Ryan L Ulibarri DDS, LLC, a Colorado limited liability company ("Company") and Ryan Ulibarri, D.D.S., sole member of the Company ("Member"), with an effective date of January 25, 2019. This Agreement supersedes and replaces all prior operating agreements of the Company, including, but not limited to, the Operating Agreement of Ryan L Ulibarri DDS, LLC dated November 30, 2016.

In consideration of the mutual covenants set forth below and other valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

## ARTICLE 1
## Formation of Professional Limited Liability Company

The Member has formed the Company under the Articles of Organization ("Articles") filed with the Colorado Secretary State on January 1, 2017 and under the Colorado Limited Liability Company Act, as amended ("Act") and the provisions of C.R.S. §§ 12-35-116 and 12-36-134. The Articles are adopted and incorporated by reference in this Agreement. The rights and obligations of the Company and the Member shall be as provided in the Articles and this Operating Agreement. In the event of any inconsistency between the Articles and this Operating Agreement, the terms of the Articles shall govern. The provisions of this Agreement shall control over provisions of the Act contrary to the provisions of this Agreement, except to the extent any provisions of this Agreement are expressly prohibited by, or ineffective under the Act or other applicable law. To the extent any provision of this Agreement is prohibited or ineffective under the Act, this Agreement shall be considered amended to the smallest degree possible in order to make it effective under the Act. In the event the Act is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment. The original name of the Company was "Ryan L. Ulibarri, DDS, PC" and was changed to "Ryan L Ulibarri, DDS, LLC" pursuant to a Statement of Combined Conversion from a Colorado professional corporation to a Colorado limited liability company with the Colorado Secretary of State. Such conversion and name change is hereby agreed to by the Company and the Member.

## ARTICLE 2
## Purposes

The purpose of the Company is to permit and facilitate its Members and other duly licensed individuals practice of dentistry.

## ARTICLE 3

**Term**

The Company shall have perpetual existence from the date of filing of the Articles with the Colorado Secretary of State, and shall continue until the Company is dissolved in accordance with either the provisions of this Operating Agreement or the Act.

## ARTICLE 4
## Capital Contributions

4.1 Membership Units. Equity ownership in the Company shall be represented by membership units ("Units"). The total number of Units which the Company is authorized to issue is 10,000. There shall be only one class of Units.

4.2 Initial Contribution. The contributions of the Member may be in cash, property, or services rendered or a promissory note or other obligation to contribute cash or property or to perform services. The Member has conveyed and contributed to the Company initial contributions as detailed in the Company Records. In consideration of the Member's capital contributions, the following number of Units has been issued to the Member:

| Name | Units |
|---|---|
| Ryan L. Ulibarri, D.D.S. | 10,000 |

No person or entity shall have the right to enforce any obligation of the Member to contribute capital to the Company.

4.3 Nonassessability of Member/Additional Contributions. The ownership interest of a Member is not subject to assessment or to the obligation to make additional contributions to the capital of the Company. The Member is not required to personally guarantee any debts or obligations of the Company.

4.4 Loans. The Member may loan additional monies to the Company in amounts and on terms and conditions to be agreed upon by the Company and the Member. The Company may also borrow money for its capital needs from any third party in amounts and on terms and conditions determined by the Manager. Loans by the Member to the Company shall not be considered capital contributions.

## ARTICLE 5
## Distributions

5.1 Definitions. The following terms have the following meanings in this Article 5

5.1.1 "Code". The Internal Revenue Code of 1986 as amended from time to time.

5.1.2 "Company Minimum Gain". An amount determined by first computing for each Company Nonrecourse Liability any gain the Company would realize if it disposed of

the Company Property subject to that liability for no consideration other than full satisfaction of the liability, and then aggregating the separately computed gains. The amount of Company Minimum Gain includes such minimum gain arising from a conversion, refinancing, or other change to a debt instrument, only to the extent a Member is allocated a share of that minimum gain. For any tax year, the net increase or decrease in Company Minimum Gain is determined by comparing the Company Minimum Gain on the last day of the immediately preceding tax year with the Minimum Gain on the last day of the current tax year. Notwithstanding any provision to the contrary contained herein, Company Minimum Gain and increases and decreases in Company Minimum Gain are intended to be computed in accordance with §704 of the Code and the Regulations issued thereunder, as the same may be issued and interpreted from time to time. A Member's share of Company Minimum Gain at the end of any tax year equals: the sum of nonrecourse deductions allocated to that Member (and to that Member's predecessors in interest) up to that time and the distributions made to that Member (and to that Member's predecessors in interest) up to that time of proceeds of a nonrecourse liability allocable to an increase in Company Minimum Gain minus the sum of that Member's (and of that Member's predecessors in interest) aggregate share of the net decreases in Company Minimum Gain plus their aggregate share of decreases resulting from Revaluations of Company Property subject to one or more Company Nonrecourse Liabilities.

5.1.3 "Company Nonrecourse Liability". A Company liability to the extent that no Member or related person bears the economic risk of loss (as defined in §1.752-2 of the Regulations) with respect to the liability

5.1.4 "Company Property". Any property, real or personal, tangible or intangible, owned by the Company.

5.1.5 "Member Minimum Gain". An amount determined by first computing for each Member Nonrecourse Liability any gain the Company would realize if it disposed of the Company Property subject to that liability for no consideration other than full satisfaction of the liability, and then aggregating the separately computed gains. The amount of Member Minimum Gain includes such minimum gain arising from a conversion, refinancing, or other change to a debt instrument, only to the extent a Member is allocated a share of that minimum gain. For any tax year, the net increase or decrease in Member Minimum Gain is determined by comparing the Member Minimum Gain on the last day of the immediately preceding tax year with the Minimum Gain on the last day of the current tax year. Notwithstanding any provision to the contrary contained herein, Member Minimum Gain and increases and decreases in Member Minimum Gain are intended to be computed in accordance with §704 of the Code and the Regulations issued thereunder, as the same may be issued and interpreted from time to time.

5.1.6 "Member Nonrecourse Liability". Any Company liability to the extent the liability is nonrecourse under state law, and on which a Member or related person bears the

economic risk of loss under §1.752-2 of the Regulations because, for example, the Member or related person is the creditor or a guarantor.

5.1.7 "Regulations". Except where the context indicates otherwise, the permanent, temporary, proposed, or proposed and temporary regulations of Department of the Treasury under the Code as such regulations may be lawfully changed from time to time.

5.1.8 "Revaluation". The adjustment to book value of Company Property arising from a contribution, a liquidating distribution to a Member or a liquidation of the Company.

5.2 Allocations of Profits and Losses. Except as may be required by §704(c) of the Code, and Articles 5.3, 5.4 and 5.5 below, net profits, net losses, and other items of income, gain, loss, deduction and credit shall be apportioned among the Members pro rata in accordance with their relative number of Units owned.

5.3 Company Minimum Gain Chargeback. If there is a net decrease in Company Minimum Gain for a tax year, each Member must be allocated items of income and gain for that tax year equal to that Member's share of the net decrease in Company Minimum Gain. A Member's share of the net decrease in Company Minimum Gain is the amount of the total net decrease multiplied by the Member's percentage share of the Company Minimum Gain at the end of the immediately preceding tax year. A Member's share of any decrease in Company Minimum Gain resulting from a Revaluation of Company Property equals the increase in the Member's capital account attributable to the Revaluation to the extent the reduction in minimum gain is caused by the Revaluation. A Member is not subject to the Company Minimum Gain chargeback requirement to the extent the Member's share of the net decrease in Company Minimum Gain is caused by a guarantee, refinancing, or other change in the debt instrument causing it to become partially or wholly a recourse liability or a Member nonrecourse liability, and the Member bears the economic risk of loss (within the meaning of §1.752-2 of the Regulations) for the newly guaranteed, refinanced, or otherwise changed liability.

5.4 Member Minimum Gain Chargeback. If during a tax year there is a net decrease in Member Minimum Gain, any Member with a share of that Member Minimum Gain ("partner minimum gain" as determined under §1.704-2(i)(5) of the Regulations) as of the beginning of that tax year must be allocated items of income and gain for that tax year (and, if necessary, for succeeding tax years) equal to that Member's share of the net decrease in the Company Minimum Gain. A Member's share of the net decrease in Member Minimum Gain is determined in a manner consistent with the provisions of §1.704-2(g)(2) of the Regulations. A Member is not subject to this Member Minimum Gain chargeback, however, to the extent the net decrease in Member Minimum Gain arises because the liability ceases to be Member nonrecourse liability due to a conversion, refinancing, or other change in the debt instrument that causes it to become partially or wholly a Company nonrecourse liability. The amount that would

otherwise be subject to the Member Minimum Gain chargeback is added to the Member's share of Company Minimum Gain. In addition, rules consistent with those applicable to Company Minimum Gain shall be applied to determine the shares of Member Minimum Gain and Member Minimum Gain chargeback to the extent provided under the Regulations issued pursuant to §704(b) of the Code.

5.5 Qualified Income Offset. Notwithstanding any provision of this Agreement to the contrary (other than Articles 5.3 and 5.4 above), in the event that a deficit in a Member's capital account is created or increased (taking into account any allocations, adjustments, or distributions described in §1.704-1(b)(2)(ii)(d)(4), (5), or (6)) in excess of such Member's share of Company Minimum Gain and Member Minimum Gain, plus any amount that the Member is obligated to restore to the Company, such Member will be allocated items of income and gain (consisting of a pro rata portion of each item of Company income and gain for such year) in an amount and manner sufficient to offset such offsettable decrease as quickly as possible.

5.6 Sharing of Distributions. The cash available for distribution, as determined from time to time by the Managers, shall be distributed to the Members in accordance with their respective number of Units. The Managers shall make distributions from the available cash of the Company. The Manager may, at any time, and from time to time, retain all or any portion of such cash in the Company as retained earnings, in order to satisfy the reasonable business needs and purposes of the Company including, but not limited to, the establishment and maintenance of a reserve account.

5.7 Distribution In Kind. No Member shall have the right to demand and receive distributions in any form other than cash. The Managers shall, however, have the right to approve distributions in a form other than cash, including the right to make a distribution to a Member of any asset in kind.

5.8 Right to Distribution. At the time a Member becomes entitled to receive a distribution, he shall have the status of and be entitled to all remedies available to a creditor of the Company with respect to the distribution.

5.9 Limitations on Distributions. A Member may not receive a distribution from the Company at any time in violation of the Act.

5.10 Liability Upon Return of Capital. If a Member has received any distribution in violation of this Agreement or the Act, such Member is liable to the Company for the amount of the contribution wrongfully returned as provided by the Act.

5.11 Tax Matters Partner. The Members hereby appoint Ryan Ulibarri, DDS, the Manager of the Company, as the "Partnership Representative" of the Company within the

meaning of Section 6223 of the Code (then in effect). The Partnership Representative shall generally serve as the liaison between the Company and the IRS in the event of an audit of the Company, and as the primary coordinator of Company actions in connection with such audit. No Member shall have the power to bind, to act for or to assume any obligation or responsibility on behalf of the other Member or the Company, except as specifically provided in this Agreement. The Partnership Representative, on behalf of the Company and the Members, may make any election under the Code including, without limitation, any elections under Section 6226(a) and 6226(b) of the Code, the Treasury Regulations or other legal requirements relating to Taxes, extending any limitations periods, entering into any settlement, making any filings (other than tax returns) with or entering into any agreements with the IRS or any state, local or foreign tax authority, or making any filings with any court.

## ARTICLE 6
## Management

6.1 Manager. The management of the Company shall be vested in Ryan Ulibarri, D.D.S., as the Manager of the Company. Ryan Ulibarri, D.D.S., shall have the full power and authority to bind the Company. Such Manager shall serve as Manager of the Company until he resigns or is otherwise unable to serve as Manager.

6.2 Authority of Manager. The Manager shall be the chief executive officer of the Company and shall have full, exclusive and complete authority to manage the operations and affairs of the Company. The Manager has the power, on behalf of the Company, to do all things necessary or convenient to carry out the business and affairs of the Company. The Manager may delegate portions of management authority to a person who is not a Manager of the Company, provided that such delegation is done in writing, is not for a period to exceed one year and is permitted by applicable law.

6.3 Company Property. Real and personal property owned or purchased by the Company shall be held and owned, and conveyance made, in the Company name.

6.4 Third Parties' Reliance. Every contract, deed, bill of sale, or other document relating to the sale or other transfer of Company property, or any other document relating to the Company which is executed by a Manager on behalf and in the name of the Company, shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the delivery thereof (i) the Company was in existence; (ii) no part of this Agreement or the Articles had been amended in any manner so as to restrict the Manager's authority; and (iii) the execution and delivery of such document was duly authorized by the Manager.

## ARTICLE 7
## Membership

7.1 Initial Member. The initial member is Ryan Ulibarri, D.D.S.

7.2 Additional Member. After the effective date of this Operating Agreement, a person or entity may be admitted as an additional Member only under a written agreement with

the current Member and after amending this Operating Agreement, and upon making any contribution to the Company prescribed by the current Member as a pre-condition to such admission. Any new member must be duly qualified to practice dentistry as may be required by Colorado law.

7.3 Transfer Restrictions. The transferee of a Member's Units shall not have any right to participate in the management of the business and affairs of the Company or to become a Member, unless the other Members, if any, of the Company approve such transfer or assignment by unanimous written consent. If such unanimous written consent is not obtained, the transferee shall only be entitled to receive the share of profits and income to which the transferring Member would otherwise be entitled.

7.4 Rights of Creditor Against a Member. On application to a Court of competent jurisdiction by any judgment creditor of a Member, the Court may charge the membership interest of the Member with payment of the unsatisfied amount of any judgment. To the extent so charged, the judgment creditor shall have only the rights of an assignee of the membership interest, and shall not become a substitute Member. This provision shall not deprive any Member of the benefit of any exemption laws applicable to his membership interest, and the rights of a judgment creditor specified in this Agreement shall be the sole rights of such creditor against the interest of a Member.

7.5 Liability of Member. No Member shall be liable under a judgment, decree or order of a Court, or in any other manner, for a debt, obligation, or liability of the Company.

7.6 Indemnification. Without limiting any other obligation of the Company to the Member, the Company shall indemnify the Member with respect to, and make advances for, the payments made, personal liabilities incurred, and expenses incurred, by the Member in the ordinary and proper conduct of the Company's business and affairs (including the winding up thereof) or the preservation of the Company's business or property, to the maximum extent indemnification and advances are permitted under the Act.

7.7 Conflicts of Interest. The Member shall be entitled to enter into transactions that may be competitive with, or a business opportunity that may be beneficial to, the Company. The Member does not violate a duty or obligation to the Company merely because the Member's conduct furthers the Member's own interest. The Member may lend money to and transact any other business with the Company. If the Member lend money to or transact business with the Company, their rights and obligations are the same as those of a person who is not a Member, subject to other applicable law and provided that nothing in this Section shall relieve the Member of any duties under the Act. No transaction with the Company shall be voidable solely because the Member has a direct or indirect interest in the transaction if either the transaction is fair to the Company or the Member authorize, approve or ratify the transaction.

## ARTICLE 8
## Books and Records

8.1 Books and Records. The Manager shall maintain all books and records of the Company.

8.2 Accounting. The Manager shall cause books of account to be kept for the Company. The books shall be maintained on an accrual or cash, calendar year basis. The Manager may hire an accountant or bookkeeper to perform this function.

8.3 Deposits. Funds of the Company shall be deposited in such account or accounts as may be determined from time to time by the Manager.

## ARTICLE 9
## Dissolution and Liquidation

9.1 Events of Dissolution. The Company shall be dissolved only upon:

9.1.1 The consent of the Manager; or

9.1.2 Administrative or judicial action as provided in the Act.

9.2 Winding Up and Liquidation. Upon the dissolution of the Company, the Manager shall file a Statement of Dissolution in the office of the Colorado Secretary of State in accordance with the Act. Upon filing the Statement of Dissolution, the Company shall cease to carry on its business except insofar as may be necessary for the winding up of its business. The Company shall be wound up by the Manager or any one or more other persons appointed by the Manager for such purpose, as liquidating trustee. The assets of the Company or the proceeds from the liquidation of such assets shall be distributed in the following order of priority:

9.2.1 To the payment of creditors, including the Member if the Member are a creditor of the Company, in satisfaction of liabilities of the Company, including the expenses of liquidation;

9.2.2 To the establishment of such reserves as the Manager may deem reasonably necessary to provide for any contingent or unforeseen liabilities or obligations of the Company. Such reserves shall be held in escrow for the payment of such liabilities or obligations. At the expiration of the escrow, any such reserves remaining shall be distributed in the manner hereinafter provided; and

9.2.3 The balance to the Member in accordance with their Units owned.

## ARTICLE 10
## Miscellaneous

10.1 Amendments. This Agreement may be altered, amended or modified only with the written consent of the Member.

10.2 Headings. The headings contained in this Agreement are for convenience and reference only, and shall not be used in any way to define, limit, or expand the meaning, intent, or context of this Agreement.

10.3 Construction. Unless the context in which words are used requires otherwise, the use of singular number shall include the plural and the plural the singular; the use of the masculine, feminine, or neuter pronouns shall include the masculine, feminine, and neuter; and the term "person" shall mean any individual, partnership, corporation, trust, or other entity.

10.4 Governing Law. This Agreement and the rights of the parties shall be governed by, and construed and enforced in accordance with, the laws of Colorado.

10.5 Severability. If any provision of this Agreement shall be held by any court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall not be affected, and each remaining provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

10.6 Binding Effect. This Agreement shall be binding upon, and shall inure to the benefit of, the parties and their respective heirs, personal representatives, administrators, executors, successors, and assignees.

10.7 Entire Agreement. This Agreement and the Articles of Organization set forth the entire agreement among the parties with respect to the Company, and there are no agreements among them other than as set forth in this Agreement and the Articles.

10.8 Rights of Creditors and Third Parties Under Agreement. This Agreement is entered into among the Company and the Member for the exclusive benefit of the Company, its Member, and their successors and assigns. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other person. Except and only to the extent provided by applicable law, no such creditor or third party shall have any rights under this Agreement.

Effective the date set forth above.

[*Signature Page to Follow*]

**COMPANY:**

Ryan L Ulibarri, DDS, LLC, a Colorado limited liability company

By: ____________________________
Ryan Ulibarri, D.D.S., Manager

**MEMBER:**

____________________________
Ryan Ulibarri, D.D.S., Member

MEMBERSHIP INTEREST TRANSFER AGREEMENT
OF RYAN . ULIBARRI DDS, LLC

THIS AGREEMENT, is made by and among Smile High Trust ("Smile High"); Yolanda Ulibarri, an individual ("Yolanda"); Ryan Ulibarri, DDS, an individual ("Ulibarri"); and Ryan L Ulibarri DDS, LLC, a Colorado limited liability company (the "Company"); to be effective on the Effective Date defined below.

RECITALS OF FACT:

A. Immediately prior to the Effective Date of this Agreement, Yolanda is the owner of a 5% membership interest in the Company, and Smile High is the owner of a 90% membership interest in the Company (collectively referred to as the "Transfer Membership Interest").

B. Yolanda and Smile High desire to transfer the Transfer Membership Interest to Ulibarri. Ulibarri is willing to accept the Transfer Membership Interest pursuant to the terms of this Agreement.

NOW THEREFORE, the parties agree as follows:

1. The Percentage Membership Interest. Subject to the terms and conditions set forth in this Agreement, and in consideration of the mutual promises of the parties set forth herein, and for value received, the receipt and sufficiency of which are hereby acknowledged, Yolanda and Smile High agree to transfer the Transfer Membership Interest to Ulibarri. Immediately after the transfer, Ulibarri will own 100% of the membership interests in the Company.

2. Conveyance. On the Effective Date, Yolanda and Smile High shall convey the Transfer Membership Interest to Ulibarri free and clear of liens, pledges, security interests, encumbrances, or any other legal or equitable rights or claims by third parties of any nature whatever to the Transfer Membership Interest.

3. Representations and Warranties. Yolanda and Smile High each represent and warrant the following matters to Ulibarri; acknowledge that such representations and warranties are material to this transaction; and acknowledge that Ulibarri shall rely upon them in closing this transaction, which reliance is acknowledged by Yolanda and Smile High to be reasonable:

A. Ownership. Yolanda and Smile High are the sole owners of their respective Transfer Membership Interest conveyed hereunder.

B. Authority to Convey. Yolanda and Smile High have the sole and unrestricted right and authority to convey the Transfer Membership Interest to Ulibarri.

C. No Other Agreements. Yolanda and Smile High have not made any other oral or written agreement, undertaking, or understanding with any third party whatever relative to the Transfer Membership Interest or any legal or equitable interest in it, whatever. Yolanda's and Smile High's execution and performance of this Agreement does not violate any oral or written agreement, undertaking, or understanding between Yolanda, Smile High, and any third party whatever.

The foregoing representations and warranties are true and correct as of the date of execution of this Agreement and shall also be true and correct at the time of closing and survive the closing.

4. Effective Date. The effective date of this transaction is January 25, 2019 (the "Effective Date").

5. Amendment. This Agreement may be amended only in a writing signed by all parties.

6. Colorado Law; Venue. This Agreement shall be interpreted and enforced in accordance with the laws of the State of Colorado. The parties agree that any appropriate state or federal court located in Larimer County, Colorado has exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement.

7. Time of the Essence. Time shall be of the essence of this Agreement.

8. Binding Effect. This Agreement shall inure to the benefit of, and shall bind, the parties hereto and their respective heirs, grantees, legal representatives, and assigns. Despite the prior sentence, this Agreement is not assignable or otherwise transferrable by any party.

9. Attorneys' Fees; Costs. The prevailing party(ies) in any suit or action arising out of or related to this Agreement will be entitled to recover from the other non-prevailing party(ies) its/their reasonable attorneys' fees, costs, and expenses in the amount that the court determines reasonable in both the trial court and appellate courts (as applicable).

10. Opportunity to Consult with Counsel; Construction. Each party to this Agreement represents that it has consulted with legal counsel of its choosing concerning this Agreement, or had the opportunity to do so but declined. The parties acknowledge that this Agreement has been prepared for counsel for Ulibarri. The language used in this Agreement will be deemed the language chosen by the parties to express their mutual intent, and no rule of strict construction will be applied against any party.

11. Invalidity. If a court of competent jurisdiction makes a final determination that any provision of this Agreement is invalid or unenforceable, that provision will be modified by the court so as to best continue to carry out the intent of the parties, or severed from this Agreement if it cannot be so modified; and the remaining provisions remain unimpaired.

12. Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to its subject matter, and supersedes all prior discussions and agreements between the parties with respect to the matters contained in this Agreement.

13. Further Assurances. After the Closing, each party, at the request of the other party, will execute, deliver and acknowledge if and as necessary from time to time such other and further acts and things as may be reasonably necessary to more fully and effectively consummate the transaction contemplated by this Agreement.

14. Headings; Counterparts; Signatures. The headings in this Agreement are for convenience of reference only and will not be deemed a part of this Agreement. This Agreement may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument. Facsimile signatures are valid to the same extent as original signatures.

TRANSFERORS:

[signature] TTEE
Yolanda Ulibarri

TRANSFEREE:

[signature]
Ryan Ulibarri, DDS

Smile High Trust

[signature] TTEE
Ryan Ulibarri, as Trustee

COMPANY:

Ryan L Ulibarri DDS, LLC,
a Colorado limited liability company

By: [signature]
Ryan Ulibarri, DDS, Manager

EXHIBIT A

ASSIGNMENT OF MEMBERSHIP INTEREST
(Ryan L Ulibarri, DDS, LLC)

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, Smile High Trust (the "Assignor") hereby sells, assigns and transfers to Ryan Ulibarri, DDS (the "Assignee") all right, title and interest in and to Assignor's 90% membership interest ("Membership Interest") in Ryan L Ulibarri, DDS, LLC, a Colorado limited liability company ("Company").

The Membership Interest hereby assigned represents Assignor's entire interest related to the Company including but not limited to the right to economic benefits, the right to vote on or participate in management, the right to receive information concerning the business and affairs of the business and such other rights and privileges that a member may enjoy by being a member. The Membership Interest hereby assigned is standing in the names of Smile High Trust and the Membership Interest in the Company is not certificated. The Membership Interest hereby assigned is free and clear of liens, pledges, security interests, encumbrances, or any other legal or equitable rights or claims by third parties of any nature whatever.

Effective Date: January 25, 2019

ASSIGNOR:
Smile High Trust

By: [signature] TTEE
Ryan Ulibarri, Trustee

ASSIGNMENT OF MEMBERSHIP INTEREST
(Ryan L Ulibarri, DDS, LLC)

FOR VALUE RECEIVED, the receipt and sufficiency of which are hereby acknowledged, Yolanda Ulibarri (the "Assignor") hereby sells, assigns and transfers to Ryan Ulibarri, DDS (the "Assignee") all right, title and interest in and to Assignor's 5% membership interest ("Membership Interest") in Ryan L Ulibarri, DDS, LLC, a Colorado limited liability company ("Company").

The Membership Interest hereby assigned represents Assignor's entire interest related to the Company including but not limited to the right to economic benefits, the right to vote on or participate in management, the right to receive information concerning the business and affairs of the business and such other rights and privileges that a member may enjoy by being a member. The Membership Interest hereby assigned is standing in the names of Yolanda Ulibarri and the Membership Interest in the Company is not certificated. The Membership Interest hereby assigned is free and clear of liens, pledges, security interests, encumbrances, or any other legal or equitable rights or claims by third parties of any nature whatever.

Effective Date: January 25, 2019

ASSIGNOR:

By: ______________________________
Yolanda Ulibarri, Individually